Where letters of administration are awarded to the widow and her daughter-in-law, on a petition praying therefor in which the widow's name is omitted at the beginning of a verification and the singular number

is employed in the affidavit and the petition, the affidavit being signed and sworn to by both, the decree awarding the letters under such petition will be sustained, where the daughter-in-law only qualifies and receives letters.

2. SAME.

Where a widow and a daughter-in-law prayed for letters of administration, and the petition was granted, and the daughter-in-law only qualified, the court having obtained jurisdiction, the decree made in accordance with the rights of the parties will not be disturbed.

3. SAME—JOINT ADMINISTRATION.

Where administration has been granted to a petitioner and another not entitled with the petitioner's consent, letters may be issued to those who qualify, and a joint administration is not necessary.

4. SAME—REVOCATION OF LETTERS.

Where an administratrix is proceeding with a reasonable diligence to administer the estate, allegations of improper intentions on her part and her want of acquaintance with business affairs, and of the feeble health and want of business ability of the widow, who was also appointed administratrix and did not qualify, are not ground for revocation of letters.

In the matter of the estate of David Ireland. Application to revoke letters of administration. Denied.

Mortimer G. Ireland presented his petition, alleging, among other things, that David Ireland died at Greenfield, Saratoga county, on or about the 23d day of February, 1905, and was, at the time of his death, a resident of the town of Greenfield, in that county, and left no last will and testament; that the petitioner is one of the grandchildren of the decedent; that letters of administration were issued on the decedent's estate March 21, 1905, to one Alice Ireland, who is not of kin to the deceased, and whose right to letters is subsequent to that of the petitioner; and that the petitioner was not cited upon the application for letters; and the petitioner prays for a decree awarding letters of administration to him and revoking the letters previously issued to Alice Ireland.

James A. Leary, for petitioner.
William J. Delaney, for administratrix and widow of deceased.

LESTER, S. It appears that the letters were issued to Alice upon a petition which is signed by her and by the widow, Mary A. Ireland. This petition appears to have been originally drawn for Alice Ireland, and the name of Mary A. Ireland was afterward inserted with the evident intention of making it her petition, as well as the petition of Alice. It is addressed to the Surrogate's Court of Saratoga county and states:

"The petition of Alice Ireland and Mary A. Ireland, etc., respectfully showeth."

It alleges that Mary A. Ireland is the wife of the decedent. It contains the further allegation:

"Your petitioner is the daughter-in-law of the said deceased, and as such competent to administer upon his estate."

It prays for a decree awarding letters—

"To Alice Ireland, or to such person or persons, having a prior right, as is entitled thereto, and to Mary A. Ireland, wife of deceased, and that every person, being a resident of this state, who has a right to administration prior or equal to that of the petitioner, be cited to show cause why such a decree should not be made."

The affidavit of verification is:

"Alice Ireland, the above-named petitioner, being duly sworn, deposes and says that she has heard read the foregoing petition by her subscribed, and knows the contents thereof, and that the same is true to the knowledge of deponent, except as to the matters therein stated to be alleged on information and belief, and that as to those matters she believes it to be true."

This affidavit is signed by Alice Ireland and Mary A. Ireland, and purports to be sworn to on the 15th day of March, 1905, before Charles S. Latham, justice of the peace. A decree was entered granting administration to Mary A. Ireland and Alice Ireland. Alice only qualified, by taking the oath of office and giving the required bond, until after the commencement of this proceeding, since which Mary A. Ireland has taken the oath and given a bond, which has been approved.

It is claimed on behalf of the petitioner, Mortimer G. Ireland, that this is not the petition of Mary A. Ireland, and that the decree which awards letters to her and to Alice Ireland was not authorized, but should be revoked, and that the surrogate should now proceed, upon the petition of Mortimer G. Ireland, to grant letters of administration upon the decedent's estate. The argument of the petitioner is not without some force. The petition is inartistically drawn, and the verification is somewhat defective; but the decree is such a decree as Mary Ireland, the widow of the deceased, would have been entitled to if she had presented a petition in proper form praying for a decree awarding letters of administration of the goods, chattels, and credits of the said deceased to her and to Alice Ireland. If I am right in my opinion as to the meaning of the statute, no violence has been done to the rights of any of the parties. Alice Ireland has qualified in good faith and entered upon the discharge of her duties, and is entitled to every legal intendment in her favor. The court should disregard any error or defect that does not impair the substantial rights of the present petitioner.

The petition, though informal, is, I think, sufficient in substance. It purports to be the petition of Mary A. Ireland, as well as the petition of Alice Ireland, and is subscribed by her. The use of the singular number in the body of the petition, though tending to confusion of thought, does not so obscure the meaning as to render it impossible to understand the allegations. The allegation, "your petitioner is daughter-in-law of the said deceased," evidently refers to the petitioner Alice Ireland, who is stated elsewhere in the body of the petition to be the daughter-in-law of the decedent, and the prayer is that letters be awarded to Alice Ireland and to Mary A. Ireland. The defect in the affidavit of verification consists in the omission of the name of Mary A. Ireland at the beginning as one of the deponents. If her name had been inserted there, no reasonable objection could have been made to its form. The use of the singular number in the body of it would simply indicate that each of the deponents severally swore to its contents. Both Alice and Mary A. signed the affidavit, and the certificate of the notary public should be taken, I think, as applying to both of them, at least in the absence of proof that Mary A. Ireland did not in fact make oath to it. It seems to me that the affidavit is no more defective than it would have been if the name of both of the deponents had been omitted, and it has been frequently held that such a defect is not fatal. Morrison v. Watson, 23 N. Y. Wkly. Dig. 286; People ex rel. Kenyon v. Sutherland, 81 N. Y. 1.

But it is provided by Code Civ. Proc. § 2474, that the Surrogate's Court obtains jurisdiction in every case by the existence of the jurisdictional facts prescribed by statute and by the citation or appearance of the necessary parties. In the present case the jurisdictional facts existed, and the necessary party, the widow of the decedent, appeared and presented the petition. Under such circumstances a defect in the verification could hardly deprive the surrogate of jurisdiction, and if the decree made was in accordance with the rights of the parties, and no one was injured, it ought not to be disturbed. Crosier v. Cornell Steamboat Co., 27 Hun, 215.

The present petitioner strenuously argues that, inasmuch as the statute provided (Code Civ. Proc. § 2660) that administration may be granted to one or more competent persons, although not entitled to the same, with the consent of the person entitled to be joined with such person or persons, the statute contemplates a joint administration by the person entitled and the person with whom she consents to be joined, and that in a case like the present, where the person entitled, after having obtained a decree awarding letters to her and to the person with whom she consents to be joined, fails herself to qualify by taking her oath of office and giving her bond, and leaves the other person to administer the estate without herself participating in such administration, a fraud is being perpetrated that calls for the intervention of the court, the revocation of the letters issued to the person who has qualified as administratrix, and the setting aside of the decree. I am unable to take this view of the case. I know of no reason why, when a decree is entered awarding letters to those to whom the statute directed them to be awarded, some of the persons to whom they are awarded may not qualify and take the letters, and others may not decline to avail themselves of the grant. It has never been esteemed a fraud on a testator that one of two executors named in his will should qualify and take out letters and the other should omit to do so. I understand that a similar practice prevails where administration is awarded to several persons in cases of intestacy. The Legislature must be presumed to have been familiar with the practice of the Surrogate's Court, and to have known that, where letters were awarded by its decree to two persons, one of them might qualify and never receive them. The provision of the statute, therefore, authorizing administration to be granted to one or more competent persons, although not entitled to the same, with the consent of the person entitled to be joined with such person or persons, seems to have been intended to place the parties in such a position as that the very results which are seen in this case might follow. In other words, it seems to have been intended that one who has an absolute right of administration, prior to all other persons, might consent to be joined with some near friend in whom the person entitled had confidence and that administration might be granted to both in form; but the person who might otherwise not have been entitled to letters could thus be enabled practically to assume the business of administering the estate, when by reason of age or physical infirmities, or lack of business experience, or for any other reason, the person entitled felt unable to accomplish the task or shrank from attempting it.

I have observed a curious change in the punctuation of the statute

made in 1894, when it was incorporated into section 2660 of the Code of Civil Procedure. As the statute originally stood, a comma after the words "with the consent of the person entitled" separated them from the words "to be joined with such person," and made the latter words relate back to the first clause, "Administration may be granted to one or more competent persons." The comma having now been left out, the words "to be joined with such person" are brought into closer connection with those that immediately precede them and are now to be taken as relating to the consent that is required. This slight, but significant, change in punctuation seems, therefore, to have effected a change in the grammatical construction and in the meaning of the provision. The statute formerly provided for granting administration to one or more competent persons not entitled to letters, to be joined with the person entitled thereto. It now provides for granting administration to one or more competent persons not entitled to letters when the person entitled consents to be joined with them. The words that formerly qualified the grant now qualify the consent. I am of the opinion that the statute is satisfied by a decree awarding letters to the competent person or persons named in the consent and to the person entitled, and, such a decree having been entered, the ordinary consequence follows, that one or more of the persons to whom the letters are awarded may qualify and receive them. Under such a decree the person entitled is at liberty to qualify at once and actively participate in the management of the estate, or to permit the person he has chosen to qualify and wait until some event occurs, such as the death of the acting administrator, which creates a necessity for his own action, and then to take his oath and file his bond, or he may never qualify, but leave the person whom he has chosen to complete the business of administering the estate. In adopting either course it seems to me he is neither perpetrating any fraud upon the court nor transgressing the rights of any person. He is exercising a privilege which it was the intention of the Legislature to confer upon him, and is within his rights.

The petition states that the administratrix has advertised for sale, and is about to sell and dispose of, the personal property of the decedent; that she is a person of no business ability, having never had any business other than that of a housewife, and is entirely incompetent to handle and conduct the affairs of the estate and the sale so advertised. These allegations are fortified by the affidavit of the attorney for the petitioner, who states, upon information and belief, that Mary Ireland is over 80 years of age, in feeble health, of weak mind, and thoroughly unacquainted and incompetent to handle any business; that she has not been off the mountain two miles west of Porters Corners, where she resides, for over 20 years, and that she is a woman of no education; that Alice Ireland is unacquainted with business affairs and lives upon the property which belongs to the estate of said deceased; that the deponent has been informed that Alice Ireland intends to give or set aside the bulk of the personal property of the estate to Mary Ireland as exempt, and that she has expended a large sum for a tombstone. He further says that he has seen the appraisal made by the appraisers under the direction of Alice Ireland, and has seen dodgers issued over her signature as administratrix advertising the personal property of said deceased

for sale, and that he notified Alice Ireland that said sale should not take place, as she was not entitled to letters of administration on this estate, and that he forbade said sale before it was begun on the 31st day of March, 1905. These allegations as to the age, health, mental condition, and inexperience in business affairs of the parties to whom administration was granted, conceding them to be true, do not, in my judgment, constitute any sufficient foundation for the revocation of the letters that have been issued, nor for setting aside the decree granting administration. None of them would have been a legal objection to the issuing of letters in the first instance. Neither youth nor vigor are required of an administratrix, and neither lack of education not amounting to illiteracy, nor weakness of mind not amounting to want of understanding, will suffice to debar one from his right to administer. The affidavit of Mr. Leary, the petitioner's attorney, seems rather to indicate that the administratrix has proceeded with reasonable diligence and intelligence to perform her duties in the administration of the estate. She has caused an inventory to be made, and she has advertised for sale the personal estate of the decedent. The petitioner says that he has not been served with a notice of appraisal; but the petition is verified by his attorney, Mr. Leary, who says that the petitioner is without the county of Saratoga, and it is not improbable that it was by reason of his absence from the county that he received no notice. It seems to me there is no danger to apprehend that the administratrix will give or set aside the bulk of the personal property of the estate to Mary Ireland as exempt, since the question of exemption must be settled by the appraisers and in accordance with law, and the court is able to prevent any unreasonable extension of the statute, as well as any unreasonable expenditure for a tombstone.

It is my opinion, therefore, that the application to set aside the decree and revoke the letters issued to Alice Ireland, and to issue letters to the petitioner, should be denied.

Application denied.